Syllabus.

# Richmond.

## J. C. HARRIS AND JAMES L. WEBB, EXECUTORS OF JOHN WINSLOW, DECEASED v. SARAH SPARROW.

### April 22, 1926.

1. FORMER ADJUDICATION OR RES ADJUDICATA—*Same Cause of Action—Suit to Construe Will Bequeathing Personal Effects to Plaintiff not Res Adjudicata of an Action on an Alleged Promise by Deceased to Pay Plaintiff for Board and Care—Case at Bar.*—The instant case was an action by plaintiff against the executors of a decedent upon an alleged promise of the decedent to pay plaintiff a reasonable amount at his death for boarding and taking care of decedent until his death. Defendants moved the court to dismiss the action on the ground that the matters in issue had been fully adjudicated in a chancery cause between the same parties, brought for the purpose of construing the will of the decedent under which plaintiff claimed she was bequeathed certain personal property.

   *Held:* That as the causes of action were not the same, the chancery suit did not bar the present action.

2. FORMER ADJUDICATION OR RES ADJUDICATA—*Same Cause of Action— Matters Litigated or which might have been Litigated.*—Judgment in a case between the same parties and upon the same cause of action estops the parties as to all matters litigated or which might have been litigated. But a judgment in a former suit between the same parties but on a different cause of action only estops the parties as to matters actually put in issue and adjudicated in the former suit.

3. APPEAL AND ERROR—*Record—Motion for Leave to File a Formal Plea of Res Adjudicata After Verdict—Case at Bar.*—In the instant case, after verdict was rendered and a motion to set it aside, the defendants moved the court for leave to file a formal plea of *res. adjudicata* embodying the matters upon which the motion to dismiss the action on the ground of *res adjudicata* had been made and refused. The court refused leave to allow the plea to be filed at that stage of the case. Although the plea was printed in the record there was no bill of exception signed by the judge making the plea a part of the record.

   *Held:* That the plea was not properly included in the record brought up to the appellate court.

4. APPEAL AND ERROR—*Conflicting Evidence—Promise to Pay for Board*

*and Care—Case at Bar.*—In the instant case, an action against the executors of a decedent upon a promise by the decedent to pay plaintiff for his board and care until his death, the jury found for the plaintiff and the judge who heard and observed the witnesses overruled a motion for a new trial.

*Held:* That an examination of the evidence did not show that the plaintiff's case was so without support that the appellate court would be justified in overruling the decision of the trial court upon a motion to set aside the verdict for plaintiff.

5. QUESTIONS OF LAW AND FACT—*Conflicting Evidence.*—The jury is the proper tribunal to settle any contradictory statements of witnesses.

6. APPEAL AND ERROR—*Harmless Error—Error in Instructions—Where it is Apparent that Jury did not Find for Appellant under Erroneous Instruction.*—The instant case was an action against the executors of a decedent upon an alleged promise of the decedent to bequeath his property to plaintiff and upon a promise by the decedent to pay plaintiff for his board and care until his death. The jury found against plaintiff on the alleged promise of decedent to bequeath her his property, but in her favor upon the promise to pay for his board and care.

*Held:* That if it was error for the court to submit the question of the alleged promise of the decedent to bequeath his property to plaintiff, it was harmless error.

7. EXCEPTIONS, BILL OF—*Time of Signing by Court—Last Day Falling on Sunday.*—Counting the day upon which judgment was rendered as the first day, bills of exceptions may be signed on the sixtieth day from the date of judgment, and if the sixtieth day falls on Sunday, which is *dies non juridicus,* the court can validly sign the bills on Monday, the following day, with the same effect as if they had been signed on the sixtieth day.

Error to a judgment of the Circuit Court of the city of Portsmouth, in a proceeding by motion for a judgment for money.    Judgment for plaintiff.    Defendants assign error.

*Affirmed.*

The opinion states the case.

*Jno. W. Happer* and *Thos. H. Reid,* for the plaintiffs in error.

*Jas. G. Martin & Bro.* and *Thos. E. Gilman,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

The plaintiffs in error complain of a judgment rendered against them in July, 1924, in favor of Sarah Sparrow, the defendant in error, for $3,120.00 in an action instituted by a notice of motion for judgment.

The notice of motion filed by Sarah Sparrow as plaintiff in the trial court assigned two separate grounds upon which she based her right to recovery against the defendant executors.   In the first place she alleged that John Winslow, the decedent, had contracted with her, in his life time, that he "would will to the plaintiff all his property" upon consideration that she would feed, board and care for him during the balance of his life, that she had performed her part of the contract, but that John Winslow had failed to will her his property.   In the next place the plaintiff alleges, in the nature of second count, as follows:

"That heretofore, to-wit, in the year 1902, plaintiff and said John Winslow contracted that plaintiff should board and feed and care for him until his death, and that he would pay to plaintiff a reasonable amount at his death for such board, feeding and care; and plaintiff fully performed her part of said contract, and boarded, fed and cared for him until his death in 1923; but neither he nor his executors have paid plaintiff, but have failed so to do; and the reasonable value of such board, feeding and care is a large amount, to-wit, $5,000.00."

To this notice the defendants filed a plea of non-assumpsit and grounds of defense, denying liability under either cause of action asserted against them.

The defendants, plaintiffs in error here, rely upon three assignments of error which will be considered

in the order in which they occur in the petition for writ of error.

[1] The first assignment of error is based upon the refusal of the trial court to dismiss the motion or render judgment for the defendants, for the reason alleged by the defendants that the matters in issue had been fully adjudicated between the parties in a chancery cause, decided in the same court, in which Sarah Sparrow was the plaintiff and the same executors and others were defendants. The bill of exceptions in this regard shows the manner in which this question of *res adjudicata* was raised as follows:

"Be it remembered, that on the day of the trial of this case, to-wit: July 17, 1924, and before the trial thereof, the defendants, by their attorney, presented to the court exhibits Nos. 1, 2 and 3, which are fully set forth with the evidence, in the plaintiff's bill of exceptions No. 2, and upon their plea of nonassumpsit and grounds of defense, moved the court to render judgment for the defendants upon the notice of motion and to dismiss the same because the matters in issue had been adjudicated and fully determined    *    *    ."

The court overruled the said motion of the defendants and required them to go to trial upon the merits of the case, to which ruling the defendants excepted. The three documents upon which this motion was based, referred to in the bill of exceptions as exhibits Nos. 1, 2 and 3, with the evidence, were introduced upon the trial before the jury. Exhibit No. 1 is a copy of the will of John Winslow, deceased, consisting of three separate papers, and also the order of the Hustings Court of Portsmouth admitting the three writings to probate as the will of John Winslow, entered on the 21st day of January, 1922. The exhibit No. 2 is a decree entered by the same court

on the 30th day of October, 1923, in a chancery cause
in which Sarah Sparrow was complainant and the two
executors of John Winslow, together with the parties
claiming under his will, were defendants.   Exhibit No.
3 was a copy of an order of the Supreme Court of
Appeals of Virginia, entered on the 23rd day of January,
1924, in which a writ of appeal was refused upon the
petition of Sarah Sparrow presented to the Court of
Appeals seeking an appeal from said decree of October
30, 1923, in the chancery cause.   These three exhibits
are sufficient to show that the bill in the chancery
cause was filed for the purpose of construing the will
of the testator.   It appears from the decree, which
is one settling the principles of the cause and the
rights of the parties, that the testator had left to
Sarah Sparrow "all my personal effects."   The court
held that that language in the will was used in associa-
tion with the words "testator's bed, ear rings and
necklace" and that the testator intended under the
principle of *ejusden generis* that all his personal effects
should be taken in connection with the latter words
just above quoted and should not be taken in con-
nection with the testator's real estate or money in
bank.   The decree further directed that the executors
should carry out the provisions of the will in conformity
with its meaning as adjudged and declared by the
court.   This was the decree from which, on the petition
of Sarah Sparrow, the appeal was refused.   As seen
above, the appeal was refused on the 23rd day of
January, 1924; the notice of motion was filed on the
24th day of March, 1924, and the record does not
show the date of its service.   It is manifest that the
issue between the parties in the chancery cause only
related to the proper construction of the will of the
testator and, therefore, the cause of action was not

the same cause of action upon which the notice of motion was based.

[2, 3] In applying the doctrine of estoppel by former judgment confusion of thought and expression, as was said in the recent case of *Brunner* v. *Cook*, 134 Va. 266, 114 S. E. 650, is apt to arise unless the distinction is carefully observed in the application of the doctrine of *res adjudicata* between a case in which the defense is made when the second case is between the same parties and upon the same cause of action, and the case in which the subsequent action, although between the same parties or some of them, is not upon the same cause of action. In the first mentioned instance the former judgment estops the parties as to all matters litigated or which might have been litigated. In the second instance the former judgment acts as an estoppel only as to the matters actually put in issue and adjudicated by the court. It is apparent here that the second action, if taken as between the same parties, is upon an entirely different claim or demand and that the decree in the chancery cause offered by the defendants operates as an estoppel only as to the matters in issue or point controverted upon which the finding or decree of the court was rendered. A close examination of the decree upon which the defense of *res adjudicata* is based in the instant case shows that the controverted question upon which the court passed would in no way effect the new cause of action upon which the notice of motion was based and therefore the ruling of the lower court was correct. It appears from the record that after the verdict was rendered and a motion made to set it aside the defendants moved the court to file a formal plea of *res adjudicata* embodying the matters upon which the motion had been based and embracing a copy of the bill in

chancery in the chancery cause. The court refused leave to allow the plea to be filed at that stage of the case. Although the plea is printed in the record there was no bill of exception signed by the judge making the plea a part of the record and, therefore, it was not properly included in the record brought up to this court.

[4, 5] The first assignment of error cannot be sustained. The second assignment of error is to the refusal of the court to set aside the verdict of the jury as contrary to the law and the evidence. After the preliminary motion before the court had been overruled the parties went to trial before a jury upon the issue of nonassumpsit, and after all the evidence on both sides had been adduced the court instructed the jury, and the jury rendered a verdict for three thousand one hundred and twenty dollars, upon which judgment was rendered, the court having overruled the motion of the defendants for a new trial. The evidence shows that at the time of Winslow's death he had $6,657.59 to his credit in a bank besides some little personal property and the house and lot assessed at $2,600.00. The verdict rendered by the jury being only about one-third of the total value of the testator's estate, it is manifest that the jury found against the plaintiff on the contract alleged by her according to which the testator had agreed to give her his entire estate by his will, and that they found for the plaintiff under the second claim made by her that she was entitled to compensation for about twenty years of service rendered to the testator and fixed her compensation at the amount for which the verdict was rendered. On the trial twelve witnesses testified for the plaintiff and seven witnesses for the defendant. The plaintiff and testator were both colored persons and nearly all

of the witnesses were colored persons. Some of them were of advanced age and belonging to the old class of colored folks, the plaintiff herself being apparently about eighty years of age. As is usually the case with this class of witnesses, many of them testified after rather a rambling fashion. The case attempted to be made for the plaintiff was that at the instance of John Winslow she and her husband had gone to Winslow's house about 1902 and while they had paid a small amount as a sort of rental for the house, that she, the plaintiff, had looked after all the personal wants of Winslow for the intervening period of about twenty years and he had agreed that she should be recompensed or paid for her services and care of him at his death. While the testimony is not as clear and definite as is desirable in a case of this character, yet we find there is sufficient testimony tending to show the relations of the parties to be such as claimed by the plaintiff and from which it may be inferred that the testator had promised to recompense the plaintiff for her services in the manner which she claimed. While there is conflict in the testimony the jury was the proper tribunal to settle any contradictory statements of the witnesses. The jury having found for the plaintiff and the learned judge of the trial court who heard and observed the witnesses having overruled the motion for a new trial, we do not find from the evidence that the complainant's case is so without support that this court would be justified in overruling the decision of the trial court upon the motion to set aside the verdict. We, therefore, hold the second assignment of error should be overruled.

After all the evidence was in the court gave the following three instructions, the first two being given at the instance of the plaintiff and the third upon the request of the defendants:

"(1) The court instructs the jury that if they believe from the evidence that John Winslow agreed to pay the plaintiff at his death for serving him, and pursuant to this agreement she did serve him, the jury should find for the plaintiff such amount as they believe from the evidence is fair compensation for such services.

"(2) The court instructs the jury that if they believe from the evidence that John Winslow agreed with the plaintiff that if she would serve him he would leave her his property at his death and pursuant to this agreement she did serve him, the jury should find for the plaintiff for the fair value of the property he promised to leave.

"(3) The court instructs the jury that unless they believe from the evidence that there was an agreement between Sarah J. Sparrow, the plaintiff, and John Winslow, the deceased, that she was to furnish service to John Winslow for compensation, then the jury should find for the defendants, but the court further instructs the jury that if they believe there was such agreement then they should find for the plaintiff the value of such services as were furnished."

[6] The third assignment of error rests upon the bill of exception to the giving of the second of the above instructions offered by plaintiff. It is argued that there was no evidence and certainly not sufficient evidence upon which to base a submission to the jury of the question as to the existence of a contract by which Winslow agreed to leave his property to the plaintiff, and it is further argued that inasmuch as there was real estate embraced in the property left by Winslow that such a contract was within the statute of frauds and should be in writing. We doubt very much whether the evidence was sufficient to sustain the claim that Winslow had agreed to leave the plain-

tiff by his will all of his property in consideration of her services. It is unnecessary for us, however, to consider that question because it is manifest from the size and character of the verdict that the jury found against the plaintiff upon this claim made by her in the notice of motion and found in her favor on her claim that she was entitled to compensation for her services to the testator. And even if it was error on the part of the trial court to submit that branch of the case to the jury by the instruction complained of, it was harmless error, as it plainly appears that the defendants were not injured by the giving of the instruction. This being the case the granting of the instruction is not a subject of complaint on the part of the defendants and the assignment of error in that respect cannot be sustained.

[7] Upon the argument of the case before this court objections were made to the consideration of the case at all by the court, because the bills of exceptions were improperly certified. In the oral argument it was insisted that the bills of exceptions upon which the three assignments of error were based were not signed within sixty days from the date of the judgment as required by law. The judgment was rendered on the 24th day of July, and the bills of exceptions were signed on the 22nd day of September, which, counting July 24th as the first day, was the sixty-first day from the date of the judgment. It appears, however, that September 21st fell on a Sunday. An exactly parallel case will be found in *Lakeside Inn* v. *Commonwealth*, 134 Va. 696, 114 S. E. 769. The court there held, commencing with the day on which the judgment was rendered as the first day, bills of exceptions might be signed on the sixtieth day and that if, as was the fact, in that case, the sixtieth day fell on Sunday which

was *dies non juridicus* then, under the Virginia statute, the court could validly sign the bills on Monday, the following day, with the same effect as if they had been signed on the sixtieth day. The bills of exceptions in this case were, therefore, properly signed by the judge of the trial court as required by law within sixty days from the date of judgment. Other objections were made to the bills of exceptions but in view of our conclusions as to the merits of the case it is not essential for the proper disposal of the case by this court that we should consider any additional objections to the bills of exceptions.

Upon the whole case it seems to this court that the defendants have had a fair and impartial trial before the jury under the supervision of the trial court, the judge of which approved their verdict, and that there is no error prejudicial to the defendants on the trial.

For the reasons above given the judgment of the trial court will be affirmed.

*Affirmed.*